UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ELDOR AKMALOVICH ARZIKULOV,

                Petitioner,

v.

MARKWAYNE MULLIN et al.,

                Respondents.

_____/

Case No. 1:26-cv-01499

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the Northlake Processing Center in Baldwin, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Pet., ECF No. 1, PageID.1.)  For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of Uzbekistan.  (Pet., ECF No. 1, PageID.4.)  He entered the United States in 2023.  (Resp., ECF No. 4, PageID.39.)  He was encountered by U.S. Customs and Border Patrol and charged with being present in the United States without being admitted or paroled.  (*Id.*)  He was issued a notice to appear (NTA) and released on his own recognizance. (*Id.*)  According to his petition, Petitioner was arrested by Immigration and Customs Enforcement (ICE) on November 17, 2025.  (Pet., ECF No. 1, PageID.5.)  On January 15, 2026, an immigration judge ordered that Petitioner be removed from the country.  (ECF No. 4-4, PageID.70.)  Because Petitioner appealed that order, it is not yet final.  (Resp., ECF No. 4, PageID.39.)

Over the past few months, Petitioner has filed three separate petitions for writ of habeas corpus.  In response to his first petition, the Court ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a).  *See Arzikulov v. Noem*, 1:26-cv-00147, ECF Nos. 7 and 8, PageID.121–127 (W.D. Mich. Feb. 3, 2026).  Respondents did so, and the immigration judge denied bond because the judge was not satisfied that Petitioner was not a flight risk.  *See Arzikulov v. Noem*, No. 1:26-cv-00147, ECF No. 9, PageID.128–131 (W.D. Mich. Feb. 11, 2026).  On February 11, 2026, Petitioner filed a second petition for writ of habeas corpus, alleging that the immigration judge applied the incorrect burden of proof at the bond hearing that was held on February 10, 2026.  *See Arzikulov v. Noem*, No. 1:26-cv-00472, ECF No. 1, PageID.4–8 (W.D. Mich. Feb. 11, 2026).  In response, the Court ordered Respondents to provide Petitioner with a second bond hearing at which the government would bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk.  *See Arzikulov v. Noem*, No. 1:26-cv-00472, ECF No 6 and 7., PageID.60–65 (W.D. Mich. Mar. 3, 2026).  Once again, Respondents did so, and the parties are in agreement that the immigration judge applied the specified burden of proof at the second bond hearing.  (*See* Pet., ECF No. 1, PageID.2 (noting that "the IJ properly placed the burden of proof on the government to show that Petitioner is a flight risk"); Resp., ECF No. 4, PageID.40 (noting the same).

At the second bond hearing—which took place on March 6, 2026—the Department of Homeland Security (DHS) argued that Petitioner is a flight risk for a number of reasons, including the following: (1) he only recently entered the country; (2) he initially told immigration officials that he had no reason to fear being returned to his home country; (3) he holds a transient job as a truck driver; (4) his application for asylum was pretermitted; (5) he has already been ordered

removed; and (6) there is little reason to believe that the appeal of his order of removal is likely to be successful.  (Resp., ECF No. 4, PageID.40.)   Petitioner submitted evidence to the immigration court showing, among other things, that he has established strong ties to his community.  (Reply, ECF No. 5, PageID.92.)  According to Petitioner, such ties to the community suggest that he poses an extremely low risk of flight.  (*Id.*)

After reviewing the evidence, the immigration judge denied bond, stating that "the Department of Homeland Security has proven by a preponderance of the evidence, and even at the higher standard of clear and convincing  evidence, that the Respondent is a flight risk."  (Resp., ECF No. 4, PageID.41.)  Following that decision, Petitioner filed his third petition for writ of habeas corpus.  (ECF No. 1).  In an order entered on May 11, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (ECF No. 3).  Respondents filed their response on May 14, 2026 (ECF No. 4), and Petitioner filed his reply on May 19, 2026 (ECF No. 5).

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001);  *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

**DISCUSSION**

The Court has reviewed immigration detainee petitions and granted habeas relief in hundreds of recent cases challenging Respondents' application of § 1225's mandatory detention regime.  This is not such a proceeding.  To the contrary, in this case, an immigration judge applied the § 1226 regime and found, by clear and convincing evidence, that Petitioner is a flight risk.  The question before the Court is whether that decision violates Petitioner's Fifth Amendment due process rights.  The Court concludes that it does not.

Through the INA, Congress has given the Executive broad grants of discretion.  Section 1226(a), specifically, authorizes the Attorney General to detain a noncitizen during removal proceedings and to decide whether release on bond or conditional parole is appropriate.   Section 1226(e) then restricts judicial review of such discretionary judgments, providing that courts may not "set aside" decisions regarding detention, release, or bond.  *Id.* § 1226(e).

This does not mean that the Court may not review the constitutionality of the overall statutory scheme Congress has created.  *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review," and does not bar a "constitutional challenge to the legislation authorizing his detention without bail.").  Nor does it mean that the Court may not consider whether, in certain cases, the combined effect of the Attorney General's discretionary decisions results in a violation of a petitioner's constitutional rights.  *See Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018) (instructing the court of appeals to consider whether the petitioners' constitutional rights had been violated by prolonged detention under § 1226(a)).  But it does reflect Congress's judgment that it is best to entrust the Executive with the responsibility of making the day-to-day determinations that structure the detention process and to insulate those determinations from judicial second-guessing.  So long as the Executive's exercise of that

discretion conforms to the statutory scheme and does not result in constitutional violations, the Court will not second guess Congress's decision to grant the Executive such discretion. Thus, it is the Court's role to verify that Petitioner obtains the procedural safeguards prescribed by Congress and by the Constitution, but it is not the Court's role to substitute its own judgment for that of Congress, the Immigration Judge, the BIA, or DHS.

Here, there is no question that Petitioner has received the protections granted by Congress because he was given a bond hearing in accordance with § 1226. Moreover, at that bond hearing, the immigration judge required DHS to show by a heightened standard that Petitioner posed a risk of flight should he be released on bond. After reviewing the evidence, the immigration judge was satisfied that DHS had met that burden, and neither party contends that anything other than the clear-and-convincing-evidence standard was applied. Accordingly, at present, Petitioner has received nothing less than the process that he is due under § 1226.

Therefore, the only question that remains is whether Petitioner's detention has become so prolonged as to violate Petitioner's constitutional rights. In answering that question, the Court is guided by Supreme Court precedent demonstrating that one of the most important factors for courts to consider is the length of time the detention has lasted. In *Zadvydas*, for example, the Court considered the constitutionality of detention under 8 U.S.C. § 1231(a)(6), which applies to detainees who are subject to a final order of removal. 533 U.S. 678, 682 (2001). Although the statute permitted detention "beyond the removal period," the Court emphasized that, at a certain point after removal no longer seemed reasonably foreseeable, indefinite detention would become constitutionally problematic. *Id.* at 699. The Court declined to identify a fixed point in time at which further detention would be impermissible, but it designated six months as a "presumptively reasonable period" of time for the detention to last. *Id.* at 701.

That same focus on the length of the detention can be seen in *Demore*, which considered whether mandatory pre-removal detention under § 1226(c) was constitutionally permissible.  538 U.S. at 531.  The Court concluded that it was, but a central aspect of its reasoning was tied to the fact that such mandatory detentions tend, on average, to be quite short.  *Id.* at 529–30.  The record showed that most § 1226(c) detentions concluded within a few months, with the majority lasting less than the six-month period that the Court had recognized as presumptively reasonable in *Zadvydas*.  *Id.*  The Court expressly relied on this fact to conclude that the statute, as written, was constitutional.  *Id.* at 531.  And Justice Kennedy's concurrence suggested that the result might have been different if the government were responsible for "unreasonable delay" that caused the detention to extend significantly longer.  *Id.* at 532 (Kennedy, J., concurring).

Drawing insight from these cases, a number of courts of appeals have recognized that the length of time the petitioner has been detained is one of the most important factors to consider when determining whether pre-removal detention is constitutional.  *See, e.g.*, *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 212 (3d Cir. 2020) (granting relief after the petitioner had been detained for two-and-a-half years); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (granting relief after the petitioner had been detained for fifteen months); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (granting relief after the petitioner had been detained for ten months); and *Black v. Decker*, 103 F.4th 133, 137–38 (2d Cir. 2024) (granting relief to two petitioners who had been detained for seven months and twenty-one months respectively).  Other factors that may affect the decision include whether the detention is likely to continue, whether the reasons for the delay are due to actions taken by the petitioner or by the government, and "whether the alien's conditions of confinement are 'meaningfully different[]'

6

from criminal punishment." *Id.* (quoting *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

In this case, the duration and circumstances of Petitioner's detention do not yet create a constitutional problem.  Supreme Court precedent has made clear that detention during the pendency of removal proceedings is constitutionally permissible for at least some not-insignificant period of time.  *See Demore*, 538 U.S. at 531 (explaining that "detention during removal proceedings is a constitutionally permissible part of that process" and upholding confinement lasting several months).  Even the six-month period discussed in *Zadvydas* was not referred to as a hard limit on the length of time that an alien may be detained but was rather offered as an example of a "presumptively reasonable" period of time, before which courts should not call into question the Executive's discretionary decision to keep an alien in detention.  533 U.S. at 701 ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.").  Moreover, *Zadvydas* dealt with detainees who were subject to final orders of removal, whereas the Petitioner in this case is still in the removal process and is thus still undergoing the specified processes to which he is due.  *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (recognizing that detention during the removal process is "more akin to detention during the administrative review process, which was upheld in *Demore*" than it is to the indefinite detention that was at issue in *Zadvydas*).

In sum, the Court does not find that either the length of Petitioner's current detention or the immigration judge's decision to deny his bond request have resulted in violations of the Constitution.  Should circumstances materially change—whether because proceedings stall, delays accumulate, or the detention becomes unreasonably prolonged for some other reason—the petitioner remains free to file a new § 2241 petition asserting an as-applied challenge at that time.

**<u>Conclusion</u>**

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:   June 22, 2026                              /s/ Robert J. Jonker
                                                                    ROBERT J. JONKER
                                                                    UNITED STATES DISTRICT JUDGE

8